IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TOMMY L., | § | |
|     PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 3:22-CV-2882-L-BK |
| | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
|     DEFENDANT. | § | |

**FINDINGS, RECOMMENDATIONS, AND CONCLUSIONS
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff seeks judicial review of the Commissioner's final decision denying his application for disability insurance benefits under Title II of the Social Security Act ("the Act"). Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, before the Court are *Plaintiff's Appeal Brief*, Doc. 10, and *Brief in Support of the Commissioner's Decision*, Doc. 13. For the reasons that follow, the Commissioner's decision should be **REVERSED**, and this case should be **REMANDED** for further proceedings consistent with the findings and conclusions herein.

I. **BACKGROUND**

    A. *Procedural and Factual Background*

Plaintiff filed his application for disability insurance benefits in February 2020, alleging disability beginning in December 2018 due to depression, post-concussion syndrome, back injury, gout, high blood pressure, cataracts, glaucoma, and hearing impairment. Doc. 5-1 at 68, 77, 251. The Commissioner denied Plaintiff's application at all administrative levels, and he now appeals to this Court pursuant to 42 U.S.C. § 405(g). Doc. 5-1 at 75, 88, 93-96, 100-02.

Plaintiff was born in October 1973 and was 45 years old at the time of his alleged disability onset date. Doc. 5-1 at 36, 228. Plaintiff has less than a high school education with

special education classes and past relevant work experience as "an able-bodied seaman" on an oil rig. Doc. 5-1 at 46, 60, 252.

In terms of relevant medical history, following an offshore work-related accident in October 2018, Plaintiff sought treatment for lower back pain radiating down his legs as well as a head injury. Doc. 5-1 at 326, 502. In January 2019 and August 2019, he underwent back surgeries. Doc. 5-1 at 351-52, 448.

In April 2019, Plaintiff presented to Gina Armstrong, M.D., for an evaluation of the head injury he sustained during his work accident. Doc. 5-1 at 502. He reported memory loss, irritability, concentration/attention difficulty, headaches, sleep disturbance, speech deficits, visual deficits, hearing deficits, depression, fatigue, and dizziness. Doc. 5-1 at 502. Following examinations, Dr. Armstrong assessed mild traumatic brain injury (TBI), lumbar radiculopathy, insomnia, diplopia, depression, tinnitus, and memory deficits, and prescribed Elavil, a tricyclic antidepressant with sedative effects (*see* https://www.drugs.com/elavil.html), and Amitriptyline, also a tricyclic antidepressant with sedative effects (*see* https://www.drugs.com/amitriptyline.html). Doc. 5-1 at 504.

Following his October 2018 accident, Plaintiff sought treatment for depression and anxiety. In June 2019, he underwent a mental health evaluation with Blanche Khan, Ph.D., which included a clinical interview, multiple diagnostic tests, and a medical status examination. Doc. 5-1 at 480-86. Plaintiff scored 54/63 on the Beck Depression Inventory-II,[1] placing him in

---

[1] The Beck Depression Inventory-II "is a 21-question multiple choice self-report inventory" and "one of the most widely used instruments for measuring the severity of depression." *Beck Depression Inventory (BDI)*, University of Wisconsin-Madison Addition Research Center, https://arc.psych.wisc.edu/self-report/beck-depression-inventory-bdi/ (last visited January 22, 2024). Generally, a score of 0-9 indicates minimal depression; a score of 10-18 indicates mild

2

the severe range of depression, and his Beck Anxiety Inventory-II score was 18/63, falling in the mild range of anxiety. Doc. 5-1 at 484. Dr. Khan concluded Plaintiff suffered from adjustment disorder with anxiety, anxiety disorder due to another medical condition, and depressive disorder, and recommended psychotherapy. Doc. 5-1 at 485-86. Plaintiff participated in psychotherapy sessions with Dr. Khan in the summer of 2019. Doc. 5-1 at 475-79.

In March 2021, Plaintiff also began receiving mental health treatment through MD TruCare and was diagnosed with generalized anxiety disorder, major depressive disorder, and post-traumatic stress disorder (PTSD). Doc. 5-1 at 578-79. Plaintiff's medications included Amitriptyline, Buspirone (an anti-anxiety medication[2]), and Duloxetine, a selective serotonin and norepinephrine reuptake inhibitor antidepressant (*see* https://www.drugs.com/ duloxetine.html). Doc. 5-1 at 578.

### B. The ALJ's Findings

In June 2022, the ALJ issued an unfavorable decision, applying the customary five-step sequential analysis. Doc. 5-1 at 16-37. The ALJ found that, from Plaintiff's alleged onset date of December 31, 2018, through December 31, 2021 (his date last insured), Plaintiff had the severe medically determinable impairments of lumbar degenerative disc disease with radicular signs, gout, and hypertension. Doc. 5-1 at 19. The ALJ found that Plaintiff had a medically determinable impairment of depression, but that it was non-severe and caused no more than mild functional limitations in his abilities to (1) understand, remember, or apply information; (2)

---

depression; a score of 19-29 indicates moderate depression; a score of 30-63 indicates severe depression. *Id.*

[2] *See* https://www.drugs.com/buspirone.html (last visited January 29, 2024).

interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt and manage oneself. Doc. 5-1 at 29-30. The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listing for presumptive disability under the Code of Federal Regulations. Doc. 5-1 at 30-31.

The ALJ determined that, through Plaintiff's date last insured, he retained the residual functional capacity ("RFC") to perform sedentary work, except he could not crawl or use ropes, ladders, or scaffolds; and was unable to use ramps or stairs, balance, stoop, kneel, or crouch on more than an occasional basis. Doc. 5-1 at 31. Next, with the help of a vocational expert ("VE"), the ALJ found that although Plaintiff was not able to perform his past relevant work, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, including assembler, document preparer, and call-out worker. Doc. 5-1 at 35-37, 60-62. Accordingly, the ALJ determined that Plaintiff was not disabled, as defined by the Act, from his alleged onset date through his date last insured. Doc. 5-1 at 37.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; and

4

(5) if an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is or is not disabled. *Id.* If the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Grid Rules, vocational expert testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

### III. ARGUMENT AND ANALYSIS

Plaintiff contends that the ALJ's RFC finding is not supported by substantial evidence because he failed to consider the impact of his medically determinable mental impairment of

depression. Doc. 10 at 28. In response, the Commissioner does not dispute that the ALJ failed to account for such limitations in his RFC finding and points to no language in the ALJ's decision that explains this omission. Doc. 13 at 7. The Commissioner argues, however, that this omission was "at most a harmless drafting error," because the hypothetical question to the vocational expert included the limitations. Doc. 13 at 7. Upon review, the Court finds that the ALJ erred in his RFC determination and that the error was not harmless.

Residual functional capacity, or RFC, is defined as the most that a person can still do despite recognized limitations. 20 C.F.R. § 404.1545(a)(1). The RFC determination is a combined "medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hollis v. Bowen*, 837 F.2d 1378, 1386-87 (5th Cir. 1988) (per curiam).

In determining a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 61 Fed. Reg. 34,474, 34,477 (July 2, 1996), 1996 WL 362207; *see* 20 C.F.R. § 404.1545(a)(2). "This is because even non-severe limitations may combine with other severe impairments to prevent an individual from doing past relevant work or narrow the range of work that the individual can perform." *Martha L. v. Saul*, No. 1:20-CV-00003-H-BU, 2021 WL 3610316, at *4 (N.D. Tex. July 27, 2021) (cleaned up), *adopted by* 2021 WL 3604082 (N.D. Tex. Aug. 13, 2021) (Hendrix, J.).

To assess the severity of a claimant's mental impairments and their effect on a claimant's ability to work, the Commissioner follows what is commonly called the "technique." 20 C.F.R. § 404.1520a(a). In applying the technique, an ALJ must first decide whether the claimant has a medically determinable mental impairment ("MDI"). *Id.* § 404.1520a(b)(1). The ALJ must then

consider evidence of the claimant's abilities to understand, remember, and carry out instructions, as well as respond appropriately to supervision, co-workers, and pressures in a work setting. 20 C.F.R. § 404.1545(c). The ALJ uses the "paragraph B criteria" to rate the severity of the claimant's mental limitations in the following functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. Id. § 404.1520a(c)(3). To complete this step, the ALJ rates the claimant's degree of limitation in each area as "[n]one, mild, moderate, marked, or extreme." Id. § 404.1520a(c)(4). These ratings then inform the ALJ's conclusions at subsequent steps of the sequential analysis. Id. § 404.1520a(d).

Here, the ALJ conducted a mental functioning review using the technique and found that Plaintiff's mental impairment caused no more than mild functional limitations in his abilities to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt and manage oneself. Doc. 5-1 at 29-30. The ALJ determined that Plaintiff's mental limitations were non-severe. Doc. 5-1 at 30.

The ALJ's evaluation of mental limitations at this step, however, is "not an RFC assessment but [is] used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4. The subsequent mental RFC assessment requires a more detailed analysis in which the ALJ must consider a claimant's mental disorders and express them in terms of work-related functions, including the claimant's ability to "understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers, and work situations; and deal with changes in a routine work setting." Id. at *4, 6.

"Nevertheless, courts within this district have found no legal error where an ALJ does not include mental limitations in a claimant's RFC so long as the ALJ considered the limiting effects and restrictions of all impairments in the RFC analysis, even those impairments that are non-severe." *Tamara G. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-CV-631-D-BK, 2023 WL 2504912, at *3 (N.D. Tex. Feb. 13, 2023) (cleaned up) (collecting cases), *adopted by* 2023 WL 2518840 (N.D. Tex. Mar. 14, 2023) (Fitzwater, J.). But, when an ALJ finds mental limitations are credible at steps two and three but does not include any discussion of them at later steps, an ALJ must explain "*why* he omitted *any* mental limitations from the residual-functional-capacity formulation." *Castillo v. Kijakazi*, 599 F. Supp. 3d 483, 489 (W.D. Tex. 2022) (original emphasis).

Although the ALJ stated at step four that he considered "all symptoms" (Doc. 5-1 at 31), as Plaintiff correctly points out, nowhere in the ALJ's RFC assessment does he specifically consider or address the impact of Plaintiff's mental impairment on his ability to work. Here, the ALJ recognized that "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment," *see* Doc. 5-1 at 30, but assessment of Plaintiff's mental impairment is absent from the RFC discussion. Again, the Commissioner does not dispute this or point to any language in the ALJ's decision that explains this omission. Doc. 13 at 7.

In addition, in hypotheticals posed to the VE, contrary to the Commissioner's assertions, the ALJ omitted Plaintiff's recognized mild mental limitations in two functional areas: (i) interacting with others; and (2) adapting or managing oneself. Doc. 5-1 at 61.[3] The ALJ's

---

[3] The hypothetical question the ALJ presented and relied upon specified, in relevant part:

failure to explain *why* she did not include any mental limitations from the RFC formulation and omitted mental limitations in two functional areas in the hypothetical to the VE constitutes legal error. *See Audrey M. D. v. Comm'r of Soc. Sec.*, No. 3:21-CV-02425-B-BT, 2022 WL 18356464, at *3 (N.D. Tex. Dec. 28, 2022), *adopted by* 2023 WL 223178 (N.D. Tex. Jan. 17, 2023) (Boyle, J.) (ALJ erred when she found that claimant suffered from non-severe mental impairments resulting in mild limitations but failed "to explain why she omitted [these] mental limitations from the RFC formulation or the hypothetical to the VE"); *Castillo*, 599 F. Supp. 3d at 489 (ALJ erred because, although acknowledging that Castillo was at least mildly limited in her mental functioning, "absent from the ALJ's opinion is an explanation for why these mental limitations should not be reflected in Castillo's residual functional capacity."); *Martha L.*, 2021 WL 3610316, at *5 (ALJ erred when he "recognized that Plaintiff suffered from non-severe mental impairments and further assessed Plaintiff with mild mental limitations in [his] ability to perform basic work activities," but failed to develop the impact of these limitations once he performed his RFC analysis).

Notwithstanding this legal error, remand is only warranted if the ALJ's error is harmful. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

"The ALJ has a responsibility to adequately explain his reasoning in making the findings on which his ultimate decision rests, and in doing so must address all pertinent evidence. The

---

> He should be permitted to alternate sitting and standing every 30 to 45 minutes as long as he remained in the work zone. He has the ability to understand, carry out and remember short and simple tasks and instructions. He can ask simple questions or ask for help. He should not have work activity that requires more than limited reading.

Doc. 5-1 at 61.

9

Court's inability to clearly determine whether the ALJ adequately considered certain limitations or not constitutes reversible error." *Gonzales v. Berryhill*, No. 3:16-CV-1830-BN, 2017 WL 3492215, at *6 (N.D. Tex. Aug. 15, 2017) (Horan, J.) (ALJ reversibly erred in failing to discuss any mental limitations the claimant might face due to his diagnosed acute anxiety disorder in formulating his residual-functional-capacity assessment) (quotations and citations omitted)).  The ALJ's RFC determination could "have been different had he considered the limitations that [Plaintiff] faces due to his [depression]. This, in turn, could 'have affected the jobs available at step five of the sequential evaluation process, and [Plaintiff] may have been found disabled.'" *Id.* at *6 (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 761-62 (5th Cir. 2017)); *see also Martha L.*, 2021 WL 3610316, at *7 (ALJ reversibly erred when he failed "to evaluate Plaintiff's mental impairments in the context of the mental demands of Plaintiff's past work" and "incorporation of mental limitations could have resulted in a different outcome").

      Here, upon questioning, the VE testified that if a person missed work more than one day per month, or would be off task ten minutes per hour, they could not maintain competitive employment.  Doc. 5-1 at 62-63; *Cf. Martha L.*, 2021 WL 3610316, at *6 ("The ALJ then posed a third hypothetical, in which the individual was off-task fifteen percent of more of the time during an eight-hour work day. … The VE confirmed that under those circumstances, there would be no jobs that the individual could perform.").  This additional questioning of the VE demonstrates that the ALJ's "determination could have been different had the ALJ properly incorporated the mental limitations Plaintiff faces into the RFC." *Martha L.*, 2021 WL 3610316, at *7.

Thus, the Court concludes that the ALJ's error was not harmless and, therefore, reversal and remand are warranted. Because remand is required on this issue, Plaintiff's remaining arguments are not reached.[4]

## IV. CONCLUSION

The Commissioner's decision should be **REVERSED,** and this case should be **REMANDED** for further proceedings consistent with the findings and conclusions herein.

**SO RECOMMENDED** on January 29, 2024.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

---

[4] Plaintiff's remaining issues may be raised on remand. *See* 20 C.F.R. § 404.983 (on remand from a federal court, the ALJ may consider any issues relating to the claim).

11